# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

MAURICE SCOTT,

    Plaintiff,

v.

MTA KELLER, *et al*.,

    Defendants.

Case No. 2:07-CV-00184-KJD-PAL

**ORDER**

Presently before the Court is Defendant Arvindra Brar's Motion for Summary Judgment (#78). Plaintiff filed a response in opposition (#84) to which Defendant Brar replied (#79). Also before the Court is Defendant Anitra Aytman's Motion for Summary Judgment (#80). Plaintiff filed a response in opposition (#83) to which Defendant Aytman[1] replied (#85). Finally before the Court is Plaintiff's Motion for Forty-Five (45) Day Extension of Time to Obtain Oral Deposition (#82).[2]

---

[1] At the time the factual allegations of the complaint occurred, Defendant Aytman was known as Anitra Gage.

[2] It is unclear from the record whether Plaintiff has ever received a copy of his deposition testimony. However, having conducted an exhaustive review of Plaintiff's deposition, the Court finds that no facts contained in the deposition would have raised genuine issues requiring the Court to deny Defendants' motions for summary judgment. Therefore, the Court denies Plaintiff's motion for an extension.

I.  Background

Avrindra Brar, M.D., is a licensed physician and surgeon in the State of California.  He has been employed as a physician and surgeon with the California Department of Corrections and Rehabilitiation ("CDCR") at California State Prison, Corcoran ("Corcoran") since 2001.  He works as a yard doctor and emergency room doctor and his responsibilities include treating inmates at various clinics in the prison and in the emergency room.

Defendant Anitra Aytman ("Aytman") is a nurse family practitioner in the State of California. She was employed at Corcoran in 2005.  Aytman treated and provided nursing services to inmates, including Plaintiff.

Plaintiff Maurice Scott suffered a hand injury on January 4, 2005, while incarcerated at the California State Prison, Solano ("Solano").  On January 6, 2005, Dr. Rohrer diagnosed Scott with recurrent swelling of the right hand and Scott received a prescription for Motrin, a pain reliever and anti-inflammatory medication.  An x-ray showed a fracture at the proximal end (closest to the knuckle) of the fourth metacarpal.  The fourth metacarpal refers to the metacarpal bone connected to the ring finger.  Scott's x-ray also showed that the proximal end of the damaged metacarpal was displaced dorsally, meaning that it was out of alignment and toward the palm of the hand.

On April 6, 2005, Scott was transferred to Corcoran.  On May 5, 2005, Scott was seen by the first time by Defendant Aytman.  She obtained a history from Scott who complained of pain with periodic numbness and tingling in his hand.  Scott was assessed with a fracture and referred for an orthopedic consultation and was prescribed Motrin.  On May 6, 2005, Aytman issued a notification of diagnostic test results and also issued a request for a referral to an orthopedist for follow up.

On June 8, 2005, Scott had another x-ray of his right wrist and hand.  The x-ray of the wrist showed healed fractures at the base of the fourth and fifth metacarpal bones.  It also showed slight posterior subluxation (dislocation) of the base of the fourth and fifth metacarpal bones.  Dr. Neubarth prescribed Neurotonin for relief of pain.

2

On August 2, 2005, Defendant Aytman saw Scott for the second time.  Scott was referred to physical therapy and prescribed medication for acid reflux.

Scott was seen for an orthopedic consultation on August 17, 2005, by Dr. Smith, an orthopedic surgeon at Corcoran.  Dr. Smith noted the results of the June 8th x-ray and noted that Scott complained of numbness and tingling in his hand.  Dr. Smith referred Scott for an Electromyogram ("EMG") and nerve conduction studies ("NCS").   An EMG tests the electrical activity of muscles and is used to detect many diseases and conditions including peripheral nerve damage.  An NCS tests the motor and sensory nerves electrical conduction ability primarily evaluating numbness, tingling, burning or weakness in arms and legs.  Dr. Smith noted that he needed to see Scott again, and until the tests were conducted nothing could be done for Scott, other than prescribe anti-inflammatory medication.

Scott was also seen in the clinic by Aytman on September 12, 2005.  Aytman noted that the EMG had been deferred.  She noted the EMG had been scheduled by Dr. Sanchez with follow up after the EMG was completed.  Aytman also saw Scott on November 1, 2005, but Plaintiff only complained on that date of chest pain caused by reflux.

Dr. Brar examined Scott for the first time on October 24, 2005.  Scott complained that the EMG and NCS had not been conducted yet.  Scott was wearing a wrist splint and receiving Neurotonin and Motrin for pain.  Brar diagnosed Scott with a history of metacarpal fracture and wrist trauma.  Brar contacted staff in the Utilization Management Office ("UMO"), responsible for approving and scheduling tests.  The UMO informed Brar that it had not received any order for an EMG and NCS.  Brar then ordered the test for Scott.  Brar also ordered follow up with Dr. Smith within thirty (30) days of the tests being completed.

Dr. Pineda performed the tests on November 14, 2005.  As a result of the tests, Pineda diagnosed Scott with mild carpal tunnel syndrome and mild Guyon's canal syndrome, and recommended a wrist splint for Scott.  Carpal tunnel syndrome has symptoms including numbness,

1    tingling and is commonly treated with wrist splints.  Guyon's canal syndrome, entrapment of the

2    ulnar nerve as it passes through the wrist, is also treated with the use of a splint.

3         Dr. Brar then examined Scott again on December 6, 2005 in response to two inmate

4    grievances that Scott submitted regarding the medical treatment of his right wrist.  One grievance

5    requested that Scott be sent to an outside orthopedic surgeon.  Brar denied this request, because Scott

6    was receiving care from Dr. Smith.  Brar ordered the nursing staff to contact Dr. Pineda to determine

7    what type of splint should be ordered for Scott.  The second grievance complained that Scott had not

8    been seen by a doctor for treatment of his right hand.  Brar granted the grievance and told Scott that

9    he would be treated by the specialist.

10   II.  Standard for Summary Judgment

11        Summary judgment may be granted if the pleadings, depositions, answers to interrogatories,

12   and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

13   material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ.

14   P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the

15   initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at

16   323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

17   genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

18   587 (1986); Fed. R. Civ. P. 56(e).

19        All justifiable inferences must be viewed in the light must favorable to the nonmoving party.

20   See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere

21   allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

22   or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial.

23   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

24   issues of controversy in favor of the non-moving party where the facts specifically averred by that

25   party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n., 497

26   U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

4

1   (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

2   issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere

3   speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th

4   Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine

5   issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d

6   1054, 1061 (9th Cir. 2002).

7           Summary judgment shall be entered "against a party who fails to make a showing sufficient

8   to establish the existence of an element essential to that party's case, and on which that party will

9   bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

10  if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

11  III.  Analysis

12          Both Defendants have moved for summary judgment asserting that no genuine issue of

13  material fact prevents the court from granting summary judgment for them and against Plaintiff

14  because the undisputed facts show that each Defendant did not take actions that violated Plaintiff's

15  Eighth Amendment rights, and even if such facts were found, Defendants are entitled to qualified

16  immunity.

17          Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical

18  treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner,

19  439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104(1976)).  The

20  Ninth Circuit employs a two-part test of deliberate indifference requiring a plaintiff to (1) first show

21  a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in

22  further significant injury or the unnecessary and wanton infliction of pain," and (2) the defendant's

23  response to the need was deliberately indifferent. McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th

24  Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir.

25  1997) (en banc) (citing Estelle 429 U.S. at 104) (internal quotations removed).  A plaintiff may

26  satisfy the second prong by demonstrating (1) the prison official engaged in a purposeful act or

5

failure to respond to a prisoner's pain or possible medical need, and (2) harm caused by the

indifference.  Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060.)  Indifference "may appear

when prison officials deny, delay or intentionally interfere with medical treatment, or it may be

shown by the way in which prison physicians provide medical care."  McGuckin, 974 F.2d at 1060.

"A prisoner need not show harm was substantial; however, such would provide additional support

for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett, 439 F.3d at

1096.

   Although Scott makes claims for deliberate indifference resulting from both denial and delay

of medical treatment, as he was eventually treated, all of his claims are really for delay of treatment.

In the Ninth Circuit, "mere delay of surgery, without more, is insufficient to state a claim of

deliberate medical indifference . . . unless the denial was harmful."  Shapley v. Nevada Bd. of State

Prison Com'rs, 766 F.2d 404, 407 (9th Cir. 1985).

> [A] finding that the defendant's activities resulted in "substantial" harm
> to the prisoner is not necessary, although a finding that the inmate was
> seriously harmed by the defendant's action or inaction tends to provide
> additional support to a claim that the defendant was "deliberately
> indifferent" to the prisoner's medical needs: the fact that an individual
> sat idly by as another human being was seriously injured despite the
> defendant's ability to prevent the injury is a strong indicium of
> callousness and deliberate indifference to the prisoner's suffering

McGuckin, 974 F.2d at 1060 (internal citations removed).  Once Plaintiff has established the

harmfulness of the delay, "it is up to the fact finder to determine whether or not the defendant was

'deliberately indifferent' to the prisoner's medical needs."  Id.  A finding that the delay in treatment

was an "isolated occurrence" or "isolated exception" to the inmate's overall medical treatment tends

to weigh against a finding of deliberate indifference.  See e.g. Wood v. Housewright, 900 F.2d 1332,

1334 (9th Cir. 1990); Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir.1986).  "On the other

hand, a finding that the defendant repeatedly failed to treat an inmate properly or that a single failure

was egregious strongly suggests that the defendant's actions were motivated by 'deliberate

indifference' to the prisoner's medical needs."  McGuckin, 974 F.2d at 1060-61.  "In sum, the more

1    serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light

2    of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the part

3    of the defendant." Id. at 1061.

4            A. Dr. Arvindra Brar

5            Plaintiff asserts that genuine issues of fact are raised regarding Defendant Brar's deliberate

6    indifference because Brar did not grant Plaintiff's request to see an "outside" orthopedic surgeon.

7    However, this denial of Plaintiff's grievance on our about December 6, 2005, does not evidence a

8    purposeful act or failure to respond to Plaintiff's serious medical need for several reasons.  First, Dr.

9    Brar first examined Plaintiff on October 24, 2005, more than nine months after Plaintiff's hand and

10   wrist injury occurred.  Dr. Brar discovered that the orthopedist's order, on August 17, 2005, that

11   Scott undergo an EMG and NCS had not been conducted or scheduled.  In direct response to that

12   situation, Brar ordered the tests "URGENT" and as a direct result of his efforts the tests were

13   conducted three weeks later on November 14, 2005.

14           Then, in response to Plaintiff's grievances initially filed on September 20, 2005[3] and October

15   20, 2005, Dr. Brar met with Plaintiff on December 6, 2005.  Since Plaintiff had undergone the tests

16   as ordered by Dr. Brar, he denied the request to see an outside orthopedic surgeon and told Scott that

17   he would be seen by Dr. Smith and made a request that a follow-up be scheduled.  The failure to

18   allow Scott to see an outside surgeon did not intentionally delay Scott's treatment.  Instead, the

19   record showed that Dr. Brar expedited the treatment when delay was brought to his attention.  There

20   is no evidence in the record that Dr. Brar was aware that Scott's treatment would be delayed after all

21   tests had been completed because Plaintiff merely needed a consultation with the in-house orthopedic

22   surgeon.

23           Plaintiff now alleges for the first time, on August 13, 2009, two years after his amended

24   complaint (#14) was filed, that Dr. Brar violated California Government Code § 845.6 which makes

25

26           [3]This grievance directly led to the October 24, 2005 meeting with Dr. Brar.

7

1   a public employee liable if he knew that a prisoner was in need of immediate medical care and failed

2   to take reasonable action.  However, Plaintiff has failed to demonstrate good cause under Federal

3   Rule of Civil Procedure 16(b) for failure to amend within the time specified in the scheduling order.

4           Accordingly, the court will not construe Plaintiff's opposition to the motion for summary

5   judgment as a motion to amend his pleadings.  Even if the Court would do so, such an amendment

6   would be futile, because Dr. Brar did summon medical care when presented with evidence of delay

7   in Scott's treatment.  Thus, Plaintiff has failed to demonstrate that Dr. Brar was deliberately

8   indifferent to his serious medical needs.  Therefore, the Court grants Dr. Brar's motion for summary

9   judgment.

10          B.  Anitra Aytman

11          Similarly, Plaintiff asserts Defendant Aytman delayed his treatment, disputing that she

12   ordered an orthopedic evaluation after initially seeing him after the transfer to Corcoran on May 5,

13   2005.  However, the documentary evidence demonstrates that Aytman did order the orthopedic

14   evaluation on May 5, 2005.  The evaluation was approved on May 9, 2005, though the record is

15   unclear as to who signed the approval.  The orthopedic evaluation did not occur until August 17,

16   2005, but Plaintiff has not demonstrated that Aytman was responsible for the delay.  There is no

17   indication that Aytman had any knowledge of the delay, until possibly August 2, 2005.

18          These facts, without more, do not establish that Plaintiff's Eighth Amendment rights were

19   violated.  Similar to Dr. Brar, in opposition, Plaintiff has alleged that Aytman violated California

20   Government Code § 845.6.  The Court denies any motion to amend the complaint in opposition to

21   the motion for summary judgment.  Plaintiff has not shown good cause for failing to amend the

22   complaint earlier.  Thus, the Court grants summary judgment to Defendant Aytman, because Plaintiff

23   has failed to raise genuine issues of material fact that would establish that Aytman violated his

24   constitutional rights.

25   ///

26   ///

8

IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Forty-Five (45) Day Extension of Time to Obtain Oral Deposition (#82) is **DENIED**;

IT IS FURTHER ORDERED that Defendant Arvindra Brar's Motion for Summary Judgment (#78) is **GRANTED**;

IT IS FURTHER ORDERED that Defendant Anitra Aytman's Motion for Summary Judgment (#80) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendants Arvindra Brar and Anitra Aytman and against Plaintiff.

DATED this 29th day of March 2010.

_____
Kent J. Dawson
United States District Judge