# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

MAURICE SCOTT, an individual,

     Plaintiff,

v.

MTA KELLER, *et al*.,

     Defendants.

Case No. 2:07-CV-00184-KJD-PAL

**ORDER**

Presently before the Court are Plaintiff's Motion for Summary Judgment (#88), Plaintiff's Motion for Judgment on the Pleadings (#98),[1] Defendants' Motion for Summary Judgment (#93), and Defendants' Motion to Strike (#126).  Defendants filed an opposition in response to Plaintiff's Motion for Summary Judgment (#91), to which Plaintiff replied (#92).  Plaintiff has also filed an opposition in response to Defendants' Motion for Summary Judgment (#119), to which Defendants replied (#122).  Plaintiff then filed a surreply (#124) and affidavit (#125) in response to Defendants' reply, to which Defendants filed the Motion to Strike (#126).

**I. Background**

Plaintiff Maurice Scott injured his hand on January 4, 2005, while he was an inmate at the California State Prison in Solano ("Solano").  (See #14, Exs. A–D).  Plaintiff asserts that he hurt his hand during a game of basketball, while Defendants argue that the injury resulted because Plaintiff violently accosted another inmate named Miller.  (Compare #88 at 2 with #93, Points and Authorities at 2–3).

---

[1] The Court notes that Plaintiff's Motion for Summary Judgment (#88) and Motion for Judgment on the Pleadings (#98) consist of the exact same document submitted to the Court under two different names.

1       Whatever the cause of his injury, Plaintiff asserts that he made several requests in the

2  following days for medical attention.  First, Plaintiff asserts that he reported his hand injury to

3  Defendant Wagner—a correctional officer at Solano—that same day, and the following day as well.

4  (See #119, Ex. 3 at 1).  Plaintiff also asserts that his hand was swollen, discolored, and painful when

5  he reported his injury, that Officer Wagner promised to procure medical attention on Plaintiff's

6  behalf, and that Officer Wagner failed to do so.  (See id.).  Officer Wagner, on the other hand, asserts

7  that he was not aware of Plaintiff's serious pain, and that he was busy attending to Inmate Miller,

8  who had serious face and head injuries at the time.  (See #93, Declaration of D. Wagner at 1–2).

9       Next, Plaintiff asserts that he also informed Defendant Moser—the Correctional Captain at

10  Solano—of his injury on January 5, 2005, and on January 13, 2005,[2] but that Captain Moser did

11  nothing to alert the prison medical staff to the serious pain in Plaintiff's hand.  (See #119, Ex. 3 at 1).

12  Captain Moser disputes that Plaintiff ever informed him of any physical injuries, and also argues that

13  even if Plaintiff had done so, he would merely have counseled Plaintiff to submit a medical services

14  request form, consistent with protocol.  (See #93, Declaration of D. Moser at 2).

15       It is undisputed that Plaintiff later received medical treatment.  On January 6, 2005,

16  Defendants Keller and Rohror saw Plaintiff to evaluate his hand injury.  (See #93, Declaration of Dr.

17  Meyers at 2; id., Exs. 2–4).  Defendant Keller was a Medical Technical Assistant ("MTA"), and

18  Defendant Rohror was a medical Doctor.  Both worked at Solano at the time.  (See #93, Deposition

19  Excerpts at MSJ 8–10).  When Plaintiff arrived at his consultation, MTA Keller documented

20  Plaintiff's injuries, and then referred him to Dr. Rohror, who examined Plaintiff's hand, ordered

21  some x-rays, and prescribed Motrin for Plaintiff to help with his pain.  (See id. at MSJ 11–12).  The

22  x-rays were taken that same day, and were reviewed by MTA Keller and Dr. Rohror.  (See id. at MSJ

23  12–14).  Dr. Rohror then noted that he did not believe there to be any damage to Plaintiff's hand, (see

24  id. at MSJ 13), but sent the x-rays to a radiologist in order to get a more accurate evaluation.  (See id.

25

26     [2] Plaintiff asserts that he told Defendant Moser of his injuries after his morning meal on January 5, and at an Institutional Classification Committee meeting on January 13.  (See #119, Ex. 3 at 1).

1    at MSJ 13–14).  Also on January 6, prison staff placed Plaintiff in administrative segregation,

2    pending the resolution of disciplinary charges for an assault on Inmate Miller.  (See id. at MSJ 9–10).

3    On January 16, 2005, the radiologist reported that Plaintiff had a fracture and partial dislocation on

4    the end of his fourth metacarpal in his right hand.  (See #119, Ex. 20).

5            The next month, on February 3, Plaintiff saw Defendant Noriega, another Doctor in Solano.

6    (See #93, Declaration of Dr. Meyers, Ex. 6 at MSJ 52).  During this visit, Dr. Noriega noted that

7    Plaintiff had a good grip in his right hand, but gave Plaintiff a half-cast and elastic brace to help the

8    injury heal.  (See id. at MSJ 53).  He also submitted a physician's request for a "routine" orthopedic

9    consultation on Plaintiff's hand.[3]  (See id. at MSJ 52).  Dr. Noriega then saw Plaintiff again in late

10   March, but at that time Plaintiff's medical record was not available.  As a result, Dr. Noriega

11   requested another set of x-rays on Plaintiff's hand.  (See id., Declaration of Dr. Meyers, Ex. 8 at MSJ

12   58–60).

13           On April 6, 2005, Plaintiff was transferred from Solano to the California State Prison in

14   Corcoran ("Corcoran").  (See #93, Deposition Excerpts at MSJ 7).  At Corcoran, several Doctors,

15   including orthopedic specialists, saw Plaintiff continuously after he arrived, but as a result of

16   uncertainty regarding Plaintiff's hand, he did not receive surgery until November 16, 2006, nearly

17   two years from the time of the initial injury.  (See id., Declaration of Dr. Meyers, Exs. 9–44).  During

18   the entire two years, Plaintiff has suffered pain in his right hand, and has filed suit against

19   Defendants, asserting that he has been subjected to cruel and unusual punishment in violation of his

20   rights under the Eighth Amendment to the United States Constitution.  (See generally #14).

21   **II. Plaintiff's Motion for Judgment on the Pleadings**

22           Plaintiff has filed a Motion for Judgment on the Pleadings.  (See #88 at 1; #98 at 1).  A

23   motion for judgment on the pleadings is "functionally identical" to a motion to dismiss, the principal

24   difference being the "time of filing."  See Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192

25

26       [3] It can take up to ninety days for a patient to be seen when a Doctor makes a request for a routine consultation.

1  (9th Cir. 1989).  In considering a motion for judgment on the pleadings, "all well-pleaded allegations

2  of material fact are taken as true and construed in a light most favorable to the non-moving party."

3  Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted).

4  Judgment on the pleadings is therefore appropriate only "when the moving party clearly establishes

5  on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled

6  to judgment as a matter of law."  Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co., 132 F.3d

7  526, 529 (9th Cir. 1997) (citation omitted).

8       Here, Defendants have denied a substantial portion of Plaintiff's allegations.  (See #27 at

9  1–3).  Taken as true, Defendants' pleadings create material issues of fact, the bulk of which will be

10  addressed below with respect to the parties' motions for summary judgment.  Plaintiff cannot,

11  therefore, prevail on his Motion for Judgment on the Pleadings.

12  **III. Motions for Summary Judgment**

13       A. Standard for Summary Judgment

14       Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories,

15  and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any

16  material fact and that the moving party is entitled to a judgment as a matter of law."  Celotex Corp. v.

17  Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence

18  of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.

19       The burden then shifts to the nonmoving party to set forth specific facts demonstrating a

20  genuine factual issue for trial.  See Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio

21  Corp., 475 U.S. 574, 587 (1986).  "[U]ncorroborated and self-serving testimony," without more, will

22  not create a "genuine issue" of material fact precluding summary judgment.  Villiarimo v. Aloha

23  Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (citation omitted).  Summary judgment shall be

24  entered "against a party who fails to make a showing sufficient to establish the existence of an

25  element essential to that party's case, and on which that party will bear the burden of proof at trial."

26  Celotex, 477 U.S. at 322.

B. Standard for Eighth Amendment Claims

The Eighth Amendment prevents the federal government from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. This requirement has been incorporated against the states through the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101–02 (1976). Cruel and unusual punishments are those punishments that are "incompatible with the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain." Id. at 102–03 (citations omitted).

Where, as here, the plaintiff is a prisoner alleging inadequate attention to medical needs, a party must satisfy the "objective and subject components of a two-part test." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (citation omitted). First, a party must show that the officer deprived a prisoner of the "minimal civilized measure of life's necessities." Id. (citation omitted). Second, a prisoner must show that the officer acted with "deliberate indifference" to the prisoner's needs. Id. A showing of deliberate indifference to a prisoner's serious illness or injury states a claim under 42 U.S.C. § 1983.[4] See Estelle, 429 U.S. at 104-05. In order to demonstrate deliberate indifference, a plaintiff must show that a prison official "knows of and disregards an excessive risk to inmate health and safety." Toguchi, 391 F.3d at 1057 (citation omitted). "Mere negligence . . . without more, does not violate a prisoner's Eighth Amendment rights." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1991) (citation omitted), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate indifference may be shown through circumstantial evidence of an officer's actual knowledge of a serious risk. See Lolli v. County of Orange, 351 F.3d

---

[4] Defendants counter that the doctrine of qualified immunity protects them from liability. (See #93 at 13–14). However, qualified immunity exists only where an official's conduct does not violate a "clearly established" constitutional right. See Pearson v. Callahan, 129 S. Ct. 808, 813 (2009) (dismissing the plaintiff's claim where defendants did not violate a clearly established right). Here, Plaintiff bases his claim solely on the existence of deliberate indifference to his serious medical injury. (See #14 at 20; #88 at 1–2; #119 at 2). If Plaintiff can establish such deliberate indifference, he will have stated the violation of a clearly established constitutional right, such that qualified immunity does not apply. See Estelle, 429 U.S. at 104–05. If he cannot, then he will simply have failed to prove his claim. See id. at 101–05.

1    410, 421 (9th Cir. 2003).  However, where a prison official "should have been aware of the risk, but

2    was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk."

3    Gibson v. County of Washoe, 290 F.3d 1175, 1188 (9th Cir. 2002).

4          If the claim of deliberate indifference involves a delay in providing medical care, the delay

5    must lead to further harm to the prisoner.  See Shapley v. Nev. Bd. of State Prison Comm'rs, 766

6    F.2d 404, 407 (9th Cir. 1985) (finding that the existence of a delay in providing surgery was not

7    sufficient to support a claim under the Eighth Amendment, absent harm arising out of the delay).  In

8    addition to the existence of a delay in providing treatment, a plaintiff must show the existence of

9    harm that arises as a result of the delay in treatment, such as further medical complications

10   attributable to the delay, or pain and suffering.  See Estelle, 429 U.S. at 103 ("In less serious cases,

11   denial of medical care may result in pain and suffering which no one suggests would serve any

12   penological purposes.").  The mere existence of delay, without more, is therefore insufficient to

13   establish a claim under the Eighth Amendment.  See Shapely, 766 F.2d at 407.

14         C. Defendants' Motion for Summary Judgment

15         Defendants have all moved for summary judgment.  Every Defendant makes essentially the

16   same argument—that each cannot be held liable because none of them demonstrated deliberate

17   indifference to a serious injury.  (See #93 at 9–12).  It is well-established that pain from a broken

18   bone constitutes a serious injury, see, e.g., Loe v. Armistead, 582 F.2d 1291, 1292–96 (4th Cir.

19   1978); Hughes v. Noble, 295 F.2d 495, 496 (5th Cir. 1961), and Defendants do not appear to

20   challenge Plaintiff's argument that his injury was a serious one.  (See generally #93).[5]  Instead, they

21   argue that they were not in fact aware of any serious injury, and therefore that they could not have

22   been deliberately indifferent to any such injury.  (See id. at 9–12).  The Court addresses each of

23   Defendant's deliberate indifference arguments in turn.

24

25   _____

26         [5]Since it is well-established that failure to treat a broken bone is may constitute deliberate indifference,
     Defendants Wagner and Moser's claim for qualified immunity is denied.

1      <u>1. Officer Wagner</u>

2           Plaintiff claims that he informed Officer Wagner of his injury on two separate

3 occasions—once on January 4, 2005, and then again the following day.  (<u>See</u> #119, Ex. 3 at 1, Ex. 4

4 at 1).  He further claims that he informed Officer Wagner that he was experiencing "serious pain,"

5 (#119, Ex. 3 at 1), that his right hand "had turned red on fingers [sic] and palm of hand," (#119, Ex.

6 4 at 1), and that his hand was "extremely swollen" with "bruising on fingers [sic] and palm of hand."

7 (#119, Ex. 4 at 1).  Finally, Plaintiff claims that his section of the prison was on lockdown on January

8 5, that Officer Wagner promised to alert the medical staff to Plaintiff's injury because Plaintiff could

9 not do it himself, and that on neither occasion did Officer Wagner take any action to alert medical

10 staff to Plaintiff's injury.  (#119, Ex. 3 at 1).  Plaintiff was eventually seen by medical staff on

11 January 6.  (#93, Deposition Excerpts at MSJ 10).

12           Defendant Wagner has countered that: (1) he was busy with Inmate Miller at the time

13 Plaintiff spoke with him;[6] (2) that he never saw Plaintiff's hand; and (3) that Plaintiff spoke to him in

14 a matter-of-fact tone that did not indicate any stress or pain.  (<u>See</u> #93, Declaration of D. Wagner at

15 1–2).  These arguments are insufficient to prevail on a motion for summary judgment.  A fact-finder

16 could reasonably agree with Plaintiff's version of events, since Plaintiff would be testifying from

17 personal knowledge, as would Plaintiff's brother.  (<u>See</u> #93, Exs. 3–4).  Were the fact-finder to agree

18 with Plaintiff, it would undoubtedly be reasonable to infer that Officer Wagner in fact appreciated the

19 risk of serious harm to Plaintiff.[7]  Moreover, Plaintiff did not receive any prescription for his alleged

20 pain and suffering until January 6.  (<u>See</u> #93, Deposition Excerpts at MSJ 11–12).  While the fact-

21

22           [6] Plaintiff explicitly contends that Wagner was not busy with Inmate Miller at the time Plaintiff reported his

23 injury.  (<u>See</u> #119, Ex. 3 at 1).

24           [7] As noted, Plaintiff alleges that he explicitly told Officer Wagner that he was in "serious pain."  And hands, of
course, are not invisible.  For Wagner to avoid liability under Plaintiff's version of events, the fact-finder would have to

25 also conclude that Plaintiff hid his hand behind his back, that Officer Wagner covered his eyes, or that—even though the
conversations revolved around Plaintiff's serious hand injury—Officer Wagner did not see, and was not shown,

26 Plaintiff's hand at any point during their conversations, on two separate occasions.  This strikes the Court as highly
unlikely.

finder might also accept officer Wagner's characterizations of the event, it is clear that there is a genuine issue of material fact in Plaintiff's case against Officer Wagner.  See, e.g., Loe, 582 F.2d at 1296 (finding that a complaint stated a claim where it alleged that the plaintiff had suffered from a broken arm for eleven hours before receiving medical treatment); Hughes, 295 F.2d at 496 (finding that a complaint stated a claim where it alleged a thirteen-hour delay in treating broken vertebrae).[8] Accordingly, the Court may not grant summary judgment in favor of Officer Wagner.

> 2. Captain Moser

Next, Plaintiff claims that he told Captain Moser of his injury on January 5, after Plaintiff's morning meal, because the correctional staff had failed to address the issue, and Plaintiff had hoped that Captain Moser would take action.  (See #119 at 8–9; #119, Ex. 3 at 1).  Plaintiff further asserts that he informed Captain Moser of his hand injury again on January 13, during an Institution Classification Committee review.  (See #119, Ex. 3 at 1).  Plaintiff alleges that Captain Moser responded only by telling Plaintiff to put in a medical call slip.  (See #119, Ex. 4 at 1).  With respect to their conversation on January 5, Plaintiff claims that he informed Captain Moser that he was in "serious pain," and that Plaintiff was unable to personally reach medical staff because the facility was on "modified program status."  (See #119, Ex. 3 at 1).  Plaintiff also claims that he reported to Captain Moser that his hand was "extremely swollen" and that he had "bruising on fingers [sic] and palm of hand."  (See #119, Ex. 4 at 1).

Captain Moser, on the other hand, denies having been told of Plaintiff's injury, (see #93, Declaration of D. Moser, at MSJ 194), but states that if he had been told, that his response would have been to instruct Plaintiff to submit a request for medical services, consistent with prison protocol.  (See id.).

---

[8] The Court notes that, if Plaintiff were to succeed on his claim, his damages will be limited to the pain and suffering that Plaintiff can prove he would not have suffered between January 4, 2005, and January 6, 2005, had Officer Wagner alerted medical staff to Plaintiff's injury.

1    The Court finds that Plaintiff has created a genuine issue of material fact with respect to the

2    encounter on January 5, but not with respect to Captain Moser's actions on January 13.  Plaintiff's

3    claim against Captain Moser is essentially identical to his claim against Officer Wagner.  If

4    Plaintiff's evidence were accepted by a fact-finder with respect to January 5, then Captain Moser's

5    actions likely caused Plaintiff to experience serious pain until the following day when Plaintiff was

6    finally seen by a Doctor, and when he received prescription medicine to help alleviate his pain.  As

7    with Officer Wagner, a fact-finder could easily infer that Captain Moser was actually aware of

8    Plaintiff's serious injury on January 5, and chose to ignore it.  On January 13, however, Plaintiff had

9    already been seen by a Doctor, x-rays had been taken of his hand, and he had received a prescription

10    for his pain.  The Court finds no evidence in the record that would allow a fact-finder to conclude

11    that Captain Moser's actions on January 13 would have helped to alleviate Plaintiff's suffering at that

12    point in time.  Nor does the Court find any evidence that Captain Moser would have been aware that

13    additional actions on January 13 would have had any potential to help alleviate Plaintiff's pain.  As a

14    result, the only genuine issue of material fact for trial is Plaintiff's evidence of Captain Moser's

15    failure to act on January 5.[9]

16    ### 3. Defendants Keller, Rohror, and Noriega

17    Plaintiff contends that MTA Keller, Dr. Rohror, and Dr. Noriega failed to provide adequate

18    medical treatment, and that they were deliberately indifferent to Plaintiff's injury, which caused

19    significant delay in receiving adequate medical treatment.  (See #119 at 11–16).  Plaintiff's basic

20    argument is that MTA Keller and Dr. Rohror failed to adequately diagnose his broken hand, (see

21    #119 at 12), and that they improperly provided him with "routine" care, rather than "emergency" care,

22    leading to delays in receiving treatment.  (See id.).  Finally, Plaintiff argues that Dr. Noriega also

23    improperly treated his hand injury as routine, rather than as an emergency, (see #119 at 14), and that

24

25    [9] And, as with Officer Wagner, Plaintiff's damages against Captain Moser will be limited to the pain and
26    suffering he had to endure between January 5, 2005, and January 6, 2005, that directly resulted from Captain Moser's
     failure to notify medical staff of Plaintiff's serious injury.

1    he failed to follow proper protocol in preparing Plaintiff's medical file, leading to delays in Plaintiff's

2    medical treatment at Corcoran.  (See #88 at 7).

3         Where a plaintiff alleges a violation of the Eighth Amendment that results from a doctor's

4    failure to correctly diagnose or treat a sophisticated injury, expert testimony is required.  See, e.g.,

5    Robinson v. Hagar, 292 F.3d 560, 564 (8th Cir. 2002) (requiring expert testimony to prove causation

6    of a stroke); Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Whether an instance of

7    medical misdiagnosis resulted from deliberate indifference or negligence is a factual question

8    requiring exploration by expert witnesses.").  Cf. Hutchinson v. United States, 838 F.2d 390, 392 (9th

9    Cir. 1988) (noting that under California law, expert testimony is required to prove medical

10   malpractice).

11        Mindful that Plaintiff is proceeding pro se, the Court has scoured the record in an attempt to

12   find evidence which would support Plaintiff's claims against MTA Keller, Dr. Rohror, and Dr.

13   Noriega.  However, Plaintiff's arguments regarding Defendants' medical evaluations are supported

14   only by Plaintiff's own disapproval of their actions with respect to his injury.  (See #14 at 16–17; #88

15   at 4–7; #92 at 2; #119 at 11–16).  As Plaintiff concedes that he has no medical training or experience,

16   (see #120 at 5), his medical opinion cannot satisfy the need to provide expert testimony.  See Fed. R.

17   Evid. 702 (requiring an expert to be qualified by "knowledge, skill, experience, training, or

18   education").  Finally, the Court has found absolutely no indication in the record that Dr. Noriega: (1)

19   had any duty to ensure that Plaintiff's medical file was correct when it was sent to Corcoran; (2) that

20   Dr. Noriega failed to follow proper protocols in handling Plaintiff's medical record; or (3) that

21   Plaintiff was in fact delayed from receiving treatment at Corcoran due to the lack of a proper medical

22   record.  Plaintiff's bald assertions cannot be the basis of liability against MTA Keller, Dr. Rohror, or

23   Dr. Noriega at the summary judgment stage.  See Celotex, 477 U.S. at 322–23.

24        In contrast, Defendants have provided ample evidence that they were not deliberately

25   indifferent to Plaintiff's injuries.  Dr. Meyers—a physician and surgeon with nearly twenty years of

26   medical experience practicing and supervising physicians in the California prison system—has

1   reviewed Plaintiff's medical record, and has found that MTA Keller, Dr. Rohror, and Dr. Noriega

2   acted in a manner consistent with the medical standard of care required of them.  (See #93,

3   Declaration of Dr. Meyers at 2–3).  Plaintiff is therefore unable even to establish medical malpractice,

4   much less deliberate indifference.  See Estelle, 429 U.S. at 106 ("Medical malpractice does not

5   become a constitutional violation merely because the victim is a prisoner."); Broughton v. Cutter

6   Labs., 622 F.2d 458, 460 (9th Cir. 1980) ("Mere indifference, negligence, or medical malpractice will

7   not support [a constitutional] cause of action.") (citation omitted).  Moreover, it appears that Plaintiff

8   was given a medical screening at the time he arrived at Corcoran, and was seen by medical staff

9   within a week of that time.  (See #93, Declaration of Dr. Meyers, Exs. 9–11).  Finally, there is

10  evidence to suggest that others, not Dr. Noriega, are responsible for maintaining Plaintiff's medical

11  records and files.  (See #93, Exs. 13–16).  Due to the lack of evidence in Plaintiff's favor, and the

12  evidence presented by the Defendants, it is clear that Plaintiff has failed to create a genuine issue of

13  material fact with respect to his claims against MTA Keller, Dr. Rohror, and Dr. Noriega.

14        D. Plaintiff's Motion for Summary Judgment

15        Plaintiff has also moved for summary judgment with respect to all five Defendants.  (See

16  generally #88).  As noted above, however, Plaintiff has provided no evidence to support a claim

17  against MTA Keller, Dr. Rohror, and Dr. Noriega.  Plaintiff cannot, therefore, prevail on his Motion

18  for Summary Judgment with respect to them.

19        Next, Officer Wagner and Captain Moser both dispute Plaintiff's factual allegations.

20  Defendant Wagner argues that: (1) Plaintiff's hand was not swollen at the time he reported his hand

21  injury (see #123 at 4); (2) Plaintiff did not report being in any serious pain to Officer Wagner (see

22  #93, Declaration of D. Wagner at 2); and (3) Wagner was busy with another emergency at the time he

23  spoke with Plaintiff.  (See id.).  Captain Moser does not appear to recall any interaction with Plaintiff

24  on January 5, giving rise to the plausible inference that Plaintiff may never have spoken with him on

25  that day.  (See #93, Declaration of D. Moser at 1–2).  A fact-finder could therefore reasonably find

26  that Officer Wagner and Captain Moser were not deliberately indifferent to Plaintiff's serious injury.

1  Because Defendants have created genuine issues of material fact for trial, Plaintiff cannot prevail on

2  his Motion for Summary Judgment.

3  **IV. Defendants' Motion to Strike**

4           Finally, Defendants ask the Court to strike Plaintiff's surreply, entitled "Objections," (#124),

5  and Plaintiff's Affidavit (#125).  (See #126 at 1).  However, the Court has found nothing in the

6  Plaintiff's Objections, nor in his Affidavit, which Plaintiff has not properly argued or affirmed

7  elsewhere.  The Court will therefore deny Defendants' Motion to Strike as moot.

8  **V. Conclusion**

9           Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment

10  (#88) and Motion for Judgment on the Pleadings (#98) are **DENIED**;

11           **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss (#93) is **GRANTED in**

12  **part** and **DENIED in part**:

13           **IT IS FURTHER ORDERED** that all claims against Defendants Keller, Rohror, and

14  Noriega are **DISMISSED with prejudice**;

15           **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss the claims against

16  Defendants Wagner and Moser is **DENIED**;

17           **IT IS FURTHER ORDERED** that Defendants' Motion to Strike (#126) is **DENIED**.

18           DATED this 13th day of September 2010.

19

20

21

22

23                                             _____
                                               Kent J. Dawson
24                                             United States District Judge

25

26

12